UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHARLES RICHARD OLIVER,<br><br>               Plaintiff,<br><br>  vs.<br><br>SPOKANE COUNTY FIRE DIST. 9,<br>and FIRE CHIEF ROBERT ANDERSON,<br><br>               Defendants. | NO. CV-12-00176-JLQ<br><br>MEMORANDUM OPINION AND<br>ORDER RE: DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT |

     BEFORE THE COURT is Defendants' Motion for Summary Judgment (ECF No. 17). Plaintiff has filed a Response (ECF No. 29) and Defendants have filed a Reply (ECF No. 37). Oral argument was heard on July 12, 2013. Erica Shelley Nelson appeared for Plaintiff. Sean David Jackson argued on behalf of Defendants. The court allowed the parties the opportunity to file supplemental briefs. Plaintiff filed a supplemental brief on July 22, 2013, and the Defendants responded on July 26, 2013. The court has also considered those submissions. (ECF No. 41 & 42).

**I. Introduction and Procedural History**

     This action was commenced by the filing of a Complaint on March 27, 2012. Plaintiff Charles Richard Oliver is a 61-year-old firefighter employed by the Spokane County Fire District 9 (the "District"), and has been so employed since 1981. Oliver has an unblemished record of service both as a firefighter and also in positions of leadership in the firefighters' Union. He is currently a Lieutenant.

     The gist of Plaintiff's Complaint is that he was discriminated against due to his union participation and based on his age. Plaintiff's Complaint alleged violations of Washington's Unfair Labor Practices statute, a claim for age discrimination under state law, and a claim under 42 U.S.C. 1983 for violation of his First Amendment rights.

ORDER - 1

(ECF No. 1).  Before an Answer was filed, Plaintiff filed a First Amended Complaint ("FAC") on April 13, 2012.  The FAC added a claim for violation of the federal Age Discrimination in Employment Act ("ADEA", 29 U.S.C. 621 *et seq*).  Defendants filed an Answer largely denying the allegations, and on May 23, 2013, Defendants filed a Motion for Summary Judgment seeking summary judgment on all four counts of the FAC to which Plaintiff has properly responded.

## II. Factual Background

The following factual recitation is largely undisputed, as evidenced by Plaintiff's Response to Defendants' Statement of Facts. (ECF No. 30).  Plaintiff began working for the District in 1981, and has worked there for 32-years.  He was hired as a firefighter/paramedic and became president of Local Union 2916 (the "Union") in 1984.  He served as Union president until 1993.  Defendant, Fire Chief Robert Anderson (hereafter "Chief Anderson") was appointed as Chief of the Fire District in 1987.  Relations between the Union and the District could be described as turbulent, rough, and contentious.

Plaintiff was promoted to Lieutenant in 1990, after a competitive examination process.  Since that time, Plaintiff has sought two promotions: to Line Captain in 2003 and to EMS Captain in 2011.  Plaintiff contends he did not seek additional promotions because he believed the promotion process was unfair.  In regard to the 2003 Line Captain position, Plaintiff competed in a written examination process.  On that examination, Plaintiff's score put him "dead last" in the rankings.  The person with the highest score, Greg Anderson, was promoted to Line Captain.  Plaintiff filed a grievance with the Union.  The Union determined not to advance Plaintiff's grievance, and Plaintiff opted not to initiate legal proceedings concerning the grievance.

In October 2011, Plaintiff sought promotion to the EMS Captain position.  At that time, he was 60-years old.  The one other individual who sought the promotion was Steve Tevlin, who is 6-months younger than Plaintiff.  The job description for EMS Captain was approved by the Board of Fire Commissioners at a regular open meeting in

December 2010. A copy of the job description was posted to the District's on-line employee handbook in December 2010. The EMS Captain job description contains several minimum qualifications that must be possessed by applicants, including that the applicant maintain and possess a Washington State Senior EMT Instructor certification. Plaintiff did not meet several of the minimum certification qualifications at the time his application was made. Plaintiff contends he had previously possessed the required certifications, and just needed to re-certify. It is undisputed that Plaintiff was unable to obtain the required certifications prior to the time the EMS Captain position was filled. Plaintiff contends he was unable to do so due to actions of the District. He argues that his request for CPR instructor course was denied as too expensive and that an International Fire Safety Accreditation Congress ("IFSAC") course was cancelled because it did not receive minimum enrollment. It is undisputed that Steve Tevlin did meet the minimum qualifications, and in fact was the only person so qualified when he was promoted to EMS Captain.

Plaintiff has been assigned to Station 94 since 1990. He was first assigned to Station 94 because the District needed a Lieutenant at Station 94. Plaintiff contends that Station 94 is a rural station. The call volume is lower at Station 94 and Plaintiff contends that training and instruction opportunities are lower at this station. Plaintiff states that because this Station is more isolated, employees tend to be "out of the loop with regard to information dissemination." (ECF No. 30, p. 40). In his more than twenty years at Station 94, Plaintiff only once requested a transfer from Station 94, and the request was denied. The transfer request was in the 1990's, and Plaintiff did not file a grievance regarding the denial of that transfer request.

### III. Discussion

Defendants argue that there were no actionable unfair labor practices in this case, that the statute of limitations for such claims is six-months, and Plaintiff's claims are time-barred. On the First Amendment claims Defendants argue that Plaintiff did not speak on matters of public concern, and that many of such claims are barred by the three-

ORDER - 3

year statute of limitations under 42 U.S.C. § 1983.  Additionally, Defendants argue that even if Plaintiff could establish that his speech was on a matter of public concern and made as a private citizen, there was no adverse employment action by the District. Defendants also contend that Plaintiff does not have an actionable claim for age discrimination.  Defendants argue that the age discrimination complaint relates to a 2003 Line Captain position and is untimely.  Defendants further argue that if the court finds the claim was timely, Plaintiff cannot establish that his age was the "but for" cause as to why he did not get the promotion.  Plaintiff disputes these arguments and opposes summary judgment as to all four counts in the FAC.

### A.  Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court that no genuine issue of material fact exists. *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the nonmoving party has the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the opposing party must come forward with specific facts showing that there is a genuine issue for trial. *Id*.

Although a summary judgment motion is to be granted with caution, it is not a disfavored remedy: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)(citations and quotations omitted).

### B. Count I - The State Law Unfair Labor Practices Claim

Plaintiff alleges that the Defendants engaged in an unfair labor practice by discriminating against him and/or interfering with the exercise of his rights guaranteed by RCW 41.56 et seq. Specifically, Plaintiff contends that he was not promoted due to his organization, participation, and service in the Union. (FAC, ¶¶ 3.4, 3.5). Defendants argue Plaintiff's claim is barred by the six-month statute of limitations in RCW 41.56.160(1). A claim for an unfair labor practice may be filed with either the public employees relations commission, or in court. *Imperato v. Wenatchee Valley College*, 160 Wash.App. 353 (2011). RCW 41.56.160(1) specifically provides that, "a complaint shall not be processed for any unfair labor practice occurring more than six months before the filing of the complaint with the commission." Although the statute speaks in terms of complaints filed "with the commission", the Washington Court of Appeals has held that the six-month limitations period also applies to claims filed in court. *Imperato*, 160 Wash.App. at 364.

Plaintiff's Response does not specifically address the statute of limitations argument. Instead, Plaintiff argues the merits of the unfair labor practices claim, and in doing so, largely relies on events that occurred many years before the filing of this action in 2012. Plaintiff argues that he engaged in protected activity by serving as Union president. His term ended in 1993, nineteen years prior to the filing of this action. He argues that he filed a grievance concerning his not being promoted in 2003 to Line Captain - - nine years prior to the filing of this suit. He argues that his assignment to Station 94 was discriminatory, but he was assigned there in 1990. Lastly, he argues he

ORDER - 5

was deprived of training opportunities and not allowed to test for the 2011 EMS Captain position. This is the only claim which may not be time-barred, but Plaintiff failed to address the statute of limitations argument in his briefing. The Complaint was filed on March 27, 2012. To be actionable the unfair labor practice would need to have occurred after September 27, 2011. Both the Complaint and FAC allege that on September 29, 2011, Plaintiff was informed in a letter from Chief Anderson that he would not be allowed to test for the EMS Captain position because he did not meet the minimum qualifications. Therefore, this claim of failure to promote to the EMS Captain position is the only potentially timely adverse action identified by Plaintiff.

Plaintiff argues in his Supplemental Brief that all he must do is present facts supporting an inference that exercise of his protected rights were a motivating factor in an adverse employment action to make a prima facie case. (ECF No. 41, p. 2). In order to establish a prima facie case, the employee must show "he engaged in protected conduct, and that such conduct was a substantial or motivating factor in the [adverse action]". *Highline Comm. College v. Higher Education Personnel*, 45 Wash.App. 803, 809 (1986). "If a prima facie case is made out, the employer has the opportunity to articulate legitimate, non-retaliatory reasons for its actions." *Yakima Police Patrolmen's Assoc. v. City of Yakima*, 153 Wash.App. 541, 554 (2009). Plaintiff has not demonstrated <u>when</u> he engaged in protected conduct, instead arguing generally that he often spoke out. Even in the Supplemental Brief, with knowledge that the 6-month statute of limitations was clearly at issue, Plaintiff argues that he spoke out "throughout his career" and "since serving as union president." (ECF No. 41, p. 3). Plaintiff's tenure as Union president ended 20 years ago. He states he spoke at "recent" meetings and "recently, in the last couple of years." (*Id.*). Even if Plaintiff has produced sufficient evidence from which a jury could infer that he engaged in protected speech during the relevant time period, he has not demonstrated an adverse action, or that his speech was a motivating factor.

It is undisputed that Plaintiff did not possess the minimum certifications for the EMS Captain position at the time of his application. The court finds that Plaintiff has failed to present a prima facie case. Even if Plaintiff had established a prima facie case, Defendants have articulated a legitimate, non-retaliatory basis for their actions in that Plaintiff admittedly did not have the required certifications for the EMS Captain position. For that reason, Defendants are entitled to summary judgment on Count I.

**C. Count II - Age Discrimination under Washington Law Against Discrimination (WLAD)**

Plaintiff alleges he was over 40 years of age, in a protected class, was refused promotions, and that Defendants promoted younger, less experienced employees. Plaintiff <u>alleges</u> he was refused promotions "on numerous occasions over the years, and as recently as late 2011." (FAC, ¶ 4.3). It is undisputed that Plaintiff only applied for two promotions in the 20 years prior to the filing of this lawsuit: the 2003 Line Captain position and the 2011 EMS Captain position. A claim for violation of the Washington Law Against Discrimination, RCW 49.60 et seq. ("WLAD") based on the 2003 event is time-barred. <u>See</u> *Douchette v. Bethel School Dist.*, 117 Wash.2d 805, 809 (1991)(claims of age discrimination under the WLAD subject to three year statute of limitations). A failure to promote is a discrete act which triggers the running of the statute of limitations when it occurs. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110-14 (2002).

In regard to the 2011 EMS Captain promotion, Plaintiff argues that in order to establish his claim under the WLAD he need only establish the following: 1) that he was over the age of 40; 2) that he was performing his job satisfactorily; 3) that he suffered an adverse employment action; and 4) that age was a substantial factor. (Plaintiff's Response, ECF No. 29, p. 8). The Washington Supreme Court has stated: "In Washington, the elements of a prima facie case of age discrimination under state law are substantially the same as those established by federal decisions under the ADEA." *Douchette*, 117 Wash.2d at 814. Plaintiff's recitation of the elements is substantially

ORDER - 7

correct, if this were a case of alleged wrongful discharge based on age. However, the Washington Court of Appeals has more clearly set forth the elements in the case of an alleged **failure to promote** due to age discrimination: 1) plaintiff was within a statutorily protected age group; 2) plaintiff applied for and was qualified for an available position; 3) he was not offered the promotion; and 4) the promotion went to a significantly younger person. *Kirby v. City of Tacoma*, 124 Wash.App. 454, 466 (2004).

The first and third elements are not disputed - - Plaintiff was over 40 and he was not offered the promotion. However, as to the second element, Plaintiff admits that he did not possess the minimum qualifications at the time he applied. Plaintiff's claim also fails the fourth element. The promotion went to an applicant who was just **six months** younger than Plaintiff. In *Kirby*, the plaintiff police officer was 52-years-old when he twice sought promotion to captain. Mr. Kirby "had been a temporary captain for the previous six months and had placed first on the civil service captain's list." *Id.* at 462. During both hiring selections, a younger candidate was chosen, who had scored highly (in top 3) but not as high as Kirby. The Court of Appeals found that the selected candidates, ages 42 and 45, were "somewhat younger" but not "substantially younger" than the 52-year-old plaintiff. *Id.*

Plaintiff has also not established the fourth element of this WLAD claim because besides his lack of qualifications, the candidate who was promoted was not a significantly younger person. See also *McKee v. Lehman*, 2007 WL 512542 (Wash.App. 2007)(allowing an age difference of 13 years to support a prima facie claim but stating, "courts generally view age differences of 10 or more years as significant."). Defendants are entitled to summary judgment on the Count II WLAD claim.

**D. Count III - Age Discrimination under ADEA**

Plaintiff's Count III is based on federal law, an alleged violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). The United States Supreme Court has held that the requisite standard for causation on an ADEA claim is "but for" causation. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 180

ORDER - 8

(2009). Therefore under *Gross* it is arguably more difficult for a plaintiff to establish a claim under the ADEA for age discrimination than to establish such claim under the WLAD.

The statute of limitations for an ADEA claim is two or three years, depending upon whether a willful violation is alleged. See *Douchette v. Bethel School Dist.*, 117 Wash.2d 805, 809 n. 1 (1991)("claims based on the age discrimination in employment act must be commenced within 2 years, except that claims for willful violations may be commenced within 3 years, 29 U.S.C. § 626(e), § 255"). The alleged failure-to-promote to EMS Captain occurred within two years of the filing of suit, and no additional adverse actions are alleged that fall within a three-year period of limitations. Therefore the distinction is inconsequential and the court will assume for purposes of this Motion that Plaintiff has made such allegations of willful conduct that the three-year statute of limitations applies. Thus, just as with the WLAD claim, the only alleged adverse employment action that occurred within the statute of limitations is the alleged failure-to-promote in 2011 to EMS Captain.

The Supreme Court in *Gross* held that in order to establish an ADEA claim for disparate treatment, the plaintiff "must prove, by a preponderance of the evidence, that age was the 'but for' cause of the challenged adverse employment action." 557 U.S. at 180. The Court further held: "The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor." *Id.* The elements of a prima facie case of age discrimination in failure to promote under the ADEA are essentially the same as under the WLAD: "In a failure to promote case, a plaintiff may establish a prima facie case of discrimination in violation of the ADEA by producing evidence that he or she was 1) at least forty years old, 2) qualified for the position for which an application was submitted, 3) denied the position, and 4) the promotion was given to a substantially younger person." *Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012).

ORDER - 9

The first and third elements are established. Plaintiff was over 40, and he did not receive the 2011 EMS Captain promotion. However, just as in the discussion, *supra,* of the WLAD claim, Plaintiff has not established that he was qualified for the EMS Captain position, or that the position was given to a substantially younger individual. As the Supreme Court has stated, an inference that an employment decision was based on illegal discrimination "cannot be drawn from the replacement of one worker with another worker insignificantly younger." *O'Connor v. Consolidated Coin*, 517 U.S. 308, 312-13 (1996). It is undisputed that Plaintiff did not possess the required certifications for the EMS Captain position at the time he applied, and it is undisputed that the individual who received the promotion was only 6 months younger than Plaintiff. Accordingly, Plaintiff has failed to make a prima facie case of age discrimination and Defendants are entitled to summary judgment on the Count III ADEA claim.

### E. Count IV - Violation of First Amendment rights under 42 U.S.C. § 1983

Plaintiff alleges in Count IV of the FAC that Defendants violated his right to freedom of speech and association under the First Amendment and "right to be free from age discrimination under the Equal Protection Clause." (FAC, ¶ 6.2). As Defendants correctly argue, Plaintiff cannot maintain an age discrimination in employment claim under § 1983 when Congress has enacted a comprehensive statutory scheme to address such claims. See *Ahlmeyer v. Nevada System of Higher Educ.*, 555 F.3d 1051, 1057 (9th Cir. 2009)("We...hold the ADEA precludes the assertion of age discrimination in employment claims, even those seeking to vindicate constitutional rights, under § 1983.")

Therefore, Plaintiff's Section 1983 claim may only survive based on the alleged violation of his First Amendment rights. Plaintiff agrees that in order to establish that he was retaliated against for engaging in protected speech, a five-part analysis applies: 1) whether the plaintiff spoke on a matter of public concern; 2) whether the plaintiff spoke as a private citizen or public employee; 3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; 4) whether

ORDER - 10

Defendants had an adequate justification for treating the employee differently from the general public; and 5) whether the Defendants would have taken the adverse employment action even absent the protected speech. *Eng v. Cooley*, 552 F.3d 1062, 1070-74 (9th Cir. 2009).

As to the freedom of association claim, the parties agree that the relevant test is: 1) Plaintiff engaged in protected association; 2) Defendants took an adverse employment action; and 3) Plaintiff's association was a substantial or motivating factor for the adverse employment action. *Hudson v. Craven*, 403 F.3d 691, 695 (9th Cir. 2005). Plaintiff's Section 1983 claims are subject to a three-year period of limitation. *Rose v. Rinaldi*, 654 F.2d 546, 547 (9th Cir. 1981).

The first step is to identify the speech at issue, and whether it was on a matter of public concern. Plaintiff admits that he has not filed an unfair labor practices charge since he was Union president--in 1993. He last filed a grievance in 2003. Plaintiff apparently contends that his bringing up and speaking on issues of "safe staffing" and "minimum manning" constitute protected speech on a matter of public concern. (ECF No. 29, p. 12). It is not clear from the factual record <u>when</u> Plaintiff spoke on these issues. Plaintiff claims he spoke on these issues while serving as Union president. His tenure as Union president ended in 1993 and any such claim is time barred. However, he also states he spoke on such issues at "recent" meetings and while serving on Union committees. Plaintiff's Declaration states: "Although FC Anderson may not have been present during conversations I had concerning "minimum manning" since the 1990's, I have raised these safety concerns relating to two-man staffing regularly since I joined the District, and since I have served as Union President." (ECF No. 31, ¶ 16). Plaintiff was specifically asked at his deposition if he had spoken out since March 27, 2009, and stated that he was "sure" he had spoken out. (ECF No. 33-1, Oliver Depo. p. 427). When pressed for specifics, he answered that he had spoken out at a meeting he attended for the advisory committee for the union negotiating team on the present contract. (*Id*. at 428). However, Plaintiff has not identified any adverse action that was taken in response to his

ORDER - 11

speech, frankly stating, "as far as anything being done against me, it could have been.  I don't know." (*Id.*)

In order to establish either of his First Amendment claims, Plaintiff has to demonstrate that there was an adverse employment action taken.  He candidly admits that he does not know if anything was done to him in retaliation for speaking out on the issues of minimum manning and safe staffing.  Plaintiff argues in his Supplemental Brief that the required showing of adverse action is lesser in the First Amendment context and that it "need not be severe and it need not be of a certain kind." (ECF No. 41, p. 4). Plaintiff refers the court to *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003), where the Ninth Circuit stated: "To constitute an adverse employment action, a government act of retaliation need not be severe and it need not be of a certain kind."  In so stating, the court recognized that prior authority suggested "the plaintiff must demonstrate the loss of a valuable governmental benefit or privilege." *Id.* at 975 <u>citing to</u> *Nunez v. City of Los Angeles*, 147 F.3d 867 (9th Cir. 1998).  The *Coszalter* court attempted to distinguish *Nunez* as a case where the plaintiff had only shown that he was "bad-mouthed and verbally threatened" and stated that "in some cases, the would-be retaliatory action is so insignificant that it does not deter the exercise of First Amendment rights, and thus does not constitute an adverse employment action within the meaning of the First Amendment retaliation cases." *Id.*  The alleged actions in *Coszalter* included unwarranted disciplinary action, a criminal investigation, a ten day suspension from work, a reprimand involving a false accusation, repeated and ongoing verbal harassment and humiliation, new duties, 'special' reviews, and others.  The Ninth Circuit Court did not find that all of these actions, considered individually, were adverse actions, but that "taken together, it is clear that these acts amount to a severe and sustained campaign of employer retaliation." *Id.* at 976-977.  Plaintiffs also rely on *Ellins v. City of Sierra Madre*, 710 F.3d 1049 (9th Cir. 2013), but that case is unremarkable in that the Court merely found that "deprivation of salary" was a sufficient adverse action.

ORDER - 12

By contrast, in this case Plaintiff has admitted that he does not know if any adverse action was taken against him as a result of his speaking out on minimum manning and safe staffing. A failure-to-promote is a sufficient adverse action, but Plaintiff admits he did not possess the required certifications for the position at the time he applied. Plaintiff also complains of being transferred to Station 94, but that occurred in 1990, and any claim based on that transfer is time barred. He made one transfer request in the 1990's, but it was denied. Plaintiff additionally admits that there was a legitimate basis for his transfer to Station 94. He was originally transferred to Station 94 because that station needed a Lieutenant. (ECF No. 33-1, Oliver depo. p. 349)("Q: So do you know why you were originally assigned to Station 94? A: Because I was promoted to lieutentant."). The only adverse action that is within the statute of limitations is the 2011 EMS Captain failure-to-promote claim. Plaintiff admits he was not qualified for the position. Arguably, he contends that Defendants interfered with his ability to obtain the certifications, but Plaintiff admits he was told that one course was too expensive and the IFSAC Instruction II course was cancelled because it did not meet minimum enrollment. (ECF No. 30, p. 33). Additionally, failing to offer a training course at a requested time is not a sufficient adverse employment action on which to base a claim.

Plaintiff was not qualified for the EMS Captain position due to his lack of the required certifications at the time of his application. Plaintiff at one point had the certifications, however it was his own decision to let them lapse. Plaintiff testified at deposition concerning the required American Heart Association CPR instructor certification that he let expire in 1990, when someone else started teaching the course and "the incentive for [him] to maintain the qualification when [he] wasn't using it wasn't there anymore." (Oliver Depo, p. 131). Plaintiff also testified that he did not have the International Fire Service Accreditation Congress ("IFSAC") I or II certification that was required when he applied for the EMS Captain position in 2011. (*Id*. at 136). The EMS Captain position also required a Washington State Senior EMT instructor certification. Plaintiff testified he had that certification from 1981 until sometime in the late-1990's,

ORDER - 13

but let it expire because he was no longer utilizing it. (*Id*. at 137).

Plaintiff contended at oral argument that Mr. Tevlin, who received the promotion, was given an unfair advantage. However, Plaintiff's evidence of unfair advantage is nothing more than that Chief Anderson and Mr. Tevlin were friendly. When asked at deposition what assistance Plaintiff contends Tevlin received in seeking and obtaining the position, Plaintiff stated:

> I don't know, but I know that he's very close to the chief. They're personal friends. They do a lot of things together on their off-duty time. Steve [Tevlin] offers free of charge to the chief the use of his lake cabin on a regular basis during the summertime. There's quite a bit of opportunity there for information to flow back and forth between them that I don't have. (Oliver depo. p. 257).

Such testimony ("I don't know...") and Chief Anderson being on friendly terms with Mr. Tevlin and socializing outside the workplace does not support an inference that Plaintiff was discriminated against on the basis of protected speech.

Plaintiff's freedom of association claim fails for much the same reason as the protected speech claim. Plaintiff has not made a prima facie showing that his union membership/participation was a substantial or motivating factor in the decision to promote Tevlin rather than Plaintiff to the EMS Captain position. Rather, it is undisputed that Plaintiff did not have the required certifications for the position. Further, evidence of animus based on Union participation within the 3-year statute of limitations is lacking. Plaintiff admits that he does not recall any of the District employees or members of the Board of Fire Commissioners making any comments to him within the last five years to indicate that they have an animus against Union members. (ECF No. 30, Fact 74).

**F. Hostile Work Environment Allegations in Summary Judgment Briefin**g

The parties in the Response and Reply briefing discuss the law applicable to hostile work environment claims. Defendants' Reply brief objects to Plaintiff allegedly attempting to "recharacterize" his claims and that the words "hostile work environment" are completely absent from the FAC. If this were truly a hostile work environment claim, it would potentially alter the statute of limitations analysis. See *National Railroad*

ORDER - 14

*Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). In *Morgan* the Supreme Court recognized that hostile work environment claims are "different in kind from discrete acts" and by their very nature involve repeated conduct. *Id.* at 115. "Discrete acts such as termination, **failure to promote**, denial of transfer, or refusal to hire are easy to identify." *Id.* at 114 (emphasis added). "[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id.* at 112. Plaintiff's timely claim about the 2011 EMS Captain promotion does not revive his time barred claim concerning the 2003 Line Captain promotion.

By contrast, a hostile work environment claim "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* at 122. In determining whether an actionable hostile work environment claim exists, the Supreme Court has instructed courts to "look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 116. To establish a claim of hostile work environment, a plaintiff must show harassment that is so severe and pervasive as to alter the terms and conditions of employment. *Westendorf v. West Coast Contractors*, 712 F.3d 417, 421 (9th Cir. 2013). A plaintiff must present evidence to support a finding that a reasonable person would find the work environment to be "hostile or abusive" and that he in fact did perceive it to be so. *Id.*

Plaintiff's allegations do not support a hostile work environment claim. As Defendants point out, nowhere in the FAC does Plaintiff allege a "hostile work environment". Plaintiff did not argue a hostile work environment claim at oral argument, nor is it mentioned in the Supplemental Brief. Plaintiff's pleading, briefing, and argument do not support a claim of hostile work environment. *Inter alia,* Plaintiff states that he was assigned to Station 94, which had less calls, and was allegedly staffed by persons who tended to be similar to how Plaintiff characterizes himself-- older and more

ORDER - 15

pro-Union. (See Oliver Declaration at ECF No.31, ¶ 5, "The station is largely comprised of firefighters over the age of 50, a few of whom were charter members of the Union who were active in Union affairs.")  At Station 94, Plaintiff saw Defendant Chief Anderson much less often, and has had only "maybe a dozen" conversations with Chief Anderson since the 1990s. (ECF No. 30, Fact # 83).  Plaintiff admits that he did not recall any of the District employees or members of the Board of Fire Commissioners making any comments to him in the last five years that indicate they have an animus against Union members. (ECF No. 30, Fact #74).

When Plaintiff describes an environment of cursing, yelling, and threatening language, he describes it while "functioning as the union president" and "back during that period of time." (ECF No. 33-1, Oliver Depo. p. 124-125).  Plaintiff recalls being "threatened with discipline during a computer issue that we had in the late '80s". (*Id.* at 272).  He states that while "functioning as the union president" he was threatened with termination and profanity was used. (*Id.* at 273).  Plaintiff's tenure as Union president ended in 1993, nineteen years prior to the filing of this lawsuit.  Plaintiff described labor management relations as "contentious from about 1987 to what I know about 1992 or whenever it was that I stepped down." (*Id.* at 339).  It is too late for the filing of an unfair labor practices or First Amendment claim based on profane language and threats of discipline that allegedly occurred over 19 years ago.

Plaintiff's 'hostile work environment' claim concerning age discrimination would be primarily based on alleged comments by Chief Anderson such as "those older guys from Station 94", "gray hairs", and "young bloods".  Allegedly current Fire Chief Cates also made similar comments. (ECF No. 30, p. 52-53).  A few such comments over Plaintiff's exemplary firefighter 30-year career are not severe and pervasive enough to constitute a hostile work environment.  The *Kirby* case involved quite similar comments, where the plaintiff was referred to as the "old guard" and the chief wanted to get rid of "these gray-haired old captains". 124 Wash.App. 454, 461 (2004).  The *Kirby* court stated that "such stray remarks would not have given rise to an inference of

ORDER - 16

discriminatory intent." *Id*. at 468 n. 10.  Further, in *Nesbit v. Pepsico*, 994 F.2d 703 (9th Cir. 1993), plaintiff's supervisor had said, "we don't necessarily like grey hair," and a corporate Vice President had given an interview in which he stated, "We don't want unpromotable fifty-year olds around."  The Circuit Court affirmed summary judgment for the defendant and found the gray hair comment was a stray remark that was "at best weak circumstantial evidence of discriminatory animus." *Id*. at 705.  The Vice President's remark was considered to be "very general" and not related to the termination of plaintiff. *Id*. Similarly, in the case at bar, Robert Tobiason testified that in the late-90's, in a roundtable conversation over morning coffee, Defendant Anderson said that the gray hairs need to move on so that the young bloods can proceed forward. (ECF No. 33-2, Tobiason Depo. p. 20-21).  Such a comment made approximately 15 years prior to the filing of this suit, over morning coffee, and not at all in the context of Plaintiff's attempted promotion to EMS Captain in 2011 is the epitome of a stray remark.

### III. Conclusion

Defendants are entitled to summary judgment on all claims in the FAC.  As to Count I, the only timely alleged unfair labor practice involves the application for the EMS Captain position in 2011.  Plaintiff agrees he did not possess the minimum qualifications for that position.  As to Count II asserting age discrimination under the WLAD, Plaintiff has not presented evidence to support the second or fourth element of a failure-to-promote age discrimination claim.  He was not qualified for the available position, and the promotion went to an employee who was only 6-months younger, thus not significantly younger.  The ADEA claim in Count III fails for the same reasons as the WLAD claim.  Count IV, the First Amendment claim is subject to a three-year statute of limitations.  Plaintiff's primary complaints regard his speaking on minimum manning and safe staffing concern actions in 1992 and earlier as Union president.  Such claims are time-barred.  Plaintiff has not established any adverse action causally related to his more recent speaking out on safe staffing or minimum manning.  Accordingly, as Plaintiff has failed to make a prima facie showing of any adverse employment action taken in

retaliation for protected speech or association, Defendants are also entitled to summary judgment on Count IV.

**IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment (ECF No. 17) is **GRANTED**.

2. The clerk is directed to enter Judgment in favor of Defendants and against Plaintiff dismissing the First Amended Complaint and claims therein with prejudice.

**IT IS SO ORDERED**. The Clerk is hereby directed to file this Order, enter Judgment, furnish copies to counsel, and close this file.

**DATED** this 5th day of August, 2013.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 18